## Gibbs v. Ballard County Bank's Assignee, et al.

(Decided April 22, 1914.)

### Appeal from Ballard Circuit Court.

1. **Land—Sale of in Satisfaction of Lien Debts.**—Sections 692 and 694, Civil Code, forbid the sale of indivisible real estate in satisfaction of lien debts that are due, subject to a superior lien debt which is not due.

2. **Land—When and How Sale To Be Made.**—When there are several lien debts upon the same tract of land, whether held by the same or different persons, and whether of equal dignity or otherwise, if one or more of the lien debts be not due, and it is alleged in the petition or appears from the evidence in the record that the land is not susceptible of advantageous division, no part of it should be ordered by the court to be sold, until all the lien debts become due.

W. A. ANDERSON for appellant.

HENDRICK & NICHOLS and J. CORBETT for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

On March 19th, 1907, G. D. Holt, of Ballard County, this State, borrowed of the Union Central Life Insurance Company $800.00, for which he executed his promissory note of that date payable ten years after date, with six per cent interest from date, evidenced by ten coupons attached, one payable February 1st each of the ten years, except the last, which will be due when the principal sum matures. To secure the payment of the note and interest coupons, G. D. Holt and wife, simultaneously with their date, executed, acknowledged and delivered to the Union Central Life Insurance Company, a mortgage on a tract of land containing 85 acres, lying on the Ohio River, in Ballard County. The mortgage was immediately recorded in the office of the clerk of the Ballard County Court.

On October 24, 1907, G. D. Holt for $2,500.00 sold and, by deed duly recorded, conveyed the same land to I. L. Penn, $800.00 of the consideration being the assumption by Penn of the debt of that amount and interest, secured by the mortgage held upon the land by the Union Central Life Insurance Company, and for the remaining $1,700.00 he executed to Holt his three promissory notes, bearing six per cent interest from date, payable in one, two and three years from date respectively; two of them

being for $600.00 each, the third for $500.00, and all secured by a vendor's lien on the land, subject to the mortgage lien in favor of the Union Central Life Insurance Company. The two $600.00 notes were later sold and assigned by G. D. Holt to R. Holt and the $500.00 note to S. T. Payne.

On February 15, 1910, I. L. Penn sold and, by deed also recorded, conveyed the land to the appellant, G. W. Gibbs, in consideration of the latter's assumption of the $800.00 mortgage debt and interest held by the Union Central Life Insurance Company; the two $600.00 notes held by R. Holt and the $500.00 note held by S. T. Payne; and in addition executed to Penn his note for $225.00 due one year after date. A vendor's lien was retained in the deed to secure the payment of all these notes; that of the Union Central Life Insurance Company being the first lien, the two notes of Holt and that of Payne a second lien, and the $225.00 note executed to Penn a third lien. The $225.00 note was sold and assigned by Penn to the Ballard County Bank and later became the property of E. O. Sexton, its assignee.

After the maturity of all the notes mentioned, except that of the Union Central Life Insurance Company, which will not become due until March 19, 1917, the holders thereof respectively, viz.: Holt, Payne and Sexton, assignee, by reason of their non-payment, brought suit upon them in the Ballard Circuit Court, each plaintiff praying a personal judgment against the appellant Gibbs for the amount of his debt and interest and a sale of the land conveyed him by Penn in satisfaction of their several liens in the order previously indicated. In addition to other necessary averments showing the creation of the plaintiffs' respective debts, their maturity and non-payment, the existence of the respective liens and their order of priority, it was alleged in the petition that the land covered by the liens was not susceptible of division and would have to be sold as a whole to pay them.

The appellant Gibbs by answer admitted his indebtedness upon the several notes sued on, and the right of the plaintiffs, respectively, to personal judgments against him, but denied their right to a sale of the land in satisfaction of the liens securing these debts, and alleged that as the mortgage debt held by the Union Central Life Insurance Company is the first and superior lien upon the land and would not become due until March 19, 1917, and the land is not susceptible of division, but would

have to be sold as a whole to satisfy all the liens, that such sale could not be ordered or made by the court until the debt of the Insurance Company matures.

The Union Central Life Insurance Company being made a defendant, by answer set up the execution and existence of its debt and mortgage lien upon the land; that it would not mature until March 19, 1917, and without asking judgment for the debt or enforcement of the lien, consented that the land might be sold in satisfaction of the other lien debts, subject to its debt and mortgage lien.

On submission the circuit court gave the appellees, Holt, Payne and Sexton, assignee, personal judgments against the appellant Gibbs for their debts, respectively, also for the enforcement of their respective liens and directed a sale of the land in satisfaction thereof, subject to the debt and mortgage lien of the Union Central Life Insurance Company, and Gibbs, being dissatisfied with that judgment, has appealed.

The judgment was unauthorized and is manifestly erroneous. The rights of the parties must be determined by sections 692-694, Civi Code. Section 694 provides:

"1.    Before ordering a sale of real property for the payment of debt, the court must be satisfied by the pleadings, by an agreement of the parties, by affidavits filed, or by a report of a commissioner or commissioners, whether or not the property can be divided without materially impairing its value; and may cause it to be divided, with suitable avenues, streets, lanes or alleys, or without any of them."

"2.    If it be necessary to sell, for the payment of debt, a parcel of real property which cannot be divided without materially impairing its value, the officer shall sell the whole of it, though it bring more than the sum to be raised; and the court shall make proper orders for the distribution of the proceeds.

"3.    The plaintiff in an action to enforce a lien on real property shall state in his petition the liens, if any, which are held thereon by others, and make the holders defendants; and no sale of the property shall be ordered by the court prejudicial to the rights of the holders of any of the liens; and when it appears from the petition or otherwise, that several debts are secured by one lien, or by liens of equal rank, and they are all due at the

commencement of the action, or become so before judgment, the court shall order the sale for the pro rata satisfaction of all of them; but if, in such case, the debts be owned by different persons and be not all due, the court shall not order a sale of the property until they all mature.  If all such liens be held by the same party, the court may order a sale of enough of the property to pay the debts then due, unless it appear that it is not susceptible of advantageous division; or that, for some other reason, the sale would cause a sacrifice thereof, or seriously prejudice the interests of the defendants.''

In numerous decisions construing these sections of the Code we have uniformly held that a sale of indivisible real estate in satisfaction of lien debts, one or more of which is not due, cannot be made as here attempted. The most recent of these cases is that of Salyer v. Union Bank, 149 Ky., 847, in the opinion of which it is said:

"But it is insisted that it was improper to sell the property subject to the prior lien of James P. Lewis. It will be observed that sections 692 and 694 of the Code, *supra,* require plaintiff, in an action to enforce a lien, to set up the liens, if any, that are held by others, and to make the holders defendants; that plaintiff may obtain a judgment for the sale of the property to satisfy all the liens that are shown to exist, though defendants failed to assert their claims.  The defendants, however, are not allowed to withdraw or receive any of the proceeds of the sale until they have shown their right thereto by answer and cross petition.  In case, however, the debts be owned by different persons, and be not all due, the court shall not order a sale of the property until they all mature.  Furthermore, if all the liens be owned by the same party, the court may order a sale of enough of the property to pay the debts then due, unless it appear that it is not susceptible of advantageous division, or that, for some other reason, the sale would cause a sacrifice of the property, or seriously prejudice the interests of the defendants.  In construing these sections this court has held that in an action to enforce a lien, if some of the notes are due, and it appears from the petition that the property is not susceptible of advantageous division, no part of it should be sold until all the notes fall due, although they are held by the same person. Leopold v. Furber, 84 Ky., 214; Faught v. Henry, 13 Bush, 471; Gentry v. Walker, 93 Ky., 405; Melton v. Brown, 20 Rep., 882; Gunn v. Orndorf, 23 Rep., 2369. The same rule

applies to a mortgage lien where it is sought to sell land that is indivisible to pay the junior mortgage when the senior mortgage is not yet due. Hendricks v. Michel Co., 16 Rep., 769. And even an allegation that a sale at once of the entire tract was necessary to prevent loss to the creditor does not authorize a sale to pay notes not due. Burton v. McKinney, 6 Bush, 428. And in Eminson v. Risque, 9 Bush, 24, where the plaintiff held two notes, one of which was not due, it was held erroneous to order a sale of the land to pay the note due, subject to a lien for the note not due.''

"The foregoing provisions of the Code were enacted not merely for the benefit of all the lienholders, but were intended as a protection to the debtor, to prevent a multiplicity of suits and the sacrifice of his property. Where the property is indivisible, it should be sold as a whole, as this method is best calculated to insure fairness in the sale, and invite competition in the bidding. If this were not the rule, and there were a number of mortgages on the property, each of the lienholders could sell subject to all the others, and thus make necessary several sales of the same property, which would inevitably result in great sacrifice. In the present case, if the James P. Lewis mortgage was not due, it was error to sell the property at all; if due, it was error to sell the property subject to that mortgage. It should have been sold as a whole.''

This case is controlled by the opinion of the case, *supra*, and other cases cited therein. As it is here admitted by the pleadings that the land cannot be divided so that enough of it may be sold to pay the matured lien debts, there can be no sale of it until the mortgage debt of the Union Central Life Insurance Company matures. If the lien debts are not sooner paid, its sale can then be adjudged to pay all of them, according to priority. If, as contended by appellees, the delay will endanger the collection of their debts in full, they cannot complain, for their debts were created and liens acquired, with knowledge on their part of the existence of the prior mortgage lien of the Union Central Life Insurance Company and when it would mature; and of the further fact that the indivisibility of the land would prevent its sale in satisfaction of their lien debts, until that of the insurance company becomes due. For the reasons indicated the judgment is reversed and cause remanded for further proceedings consistent with the opinion.