## Hardwick v. Fitzpatrick et al.

June 9, 1939.

Lafon Allen, Special Judge.

**54**

Cornelius W. Grafton for appellant.

No brief for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On October 9, 1937, the appellees and two of the defendants below, Mary Fitzpatrick and her husband, Clarence Fitzpatrick, executed a note to the appellant and plaintiff below, Walter Lee Hardwick, agreeing and promising to pay him $1100, payable $20 each month until August 19, 1938, when the unpaid balance became due and payable—the note drawing interest at the rate of 6% per annum. The consideration for it was a deferred payment on the price of a house and lot sold by plaintiff to defendants, and a lien to secure its payment was reserved in the deed made by appellant to defendants. There was a prior lien on the premises in favor of one A. C. Hatfield amounting to $1200, and which was superior to the lien retained by plaintiff to secure his debt.

On February 4, 1938, plaintiff exercised his right—given him in the note—to precipitate the due date thereof because of unpaid installments, and filed this action in the Jefferson circuit court against the appellants, and Mr. and Mrs. Hatfield, wherein he sought judgment for the amount of his note with accumulated interest, and the enforcement of his second lien on the property, which was described in his petition. He prayed that he be adjudged a lien subject to the Hatfield's prior one, and that the property be sold to satisfy his judgment, subject to the Hatfield lien, it not being due either at that date, nor at the later date of rendering judgment. A second lien on the land was adjudged to secure the amount of the judgment, interest and costs. The Hatfields answered setting up their prior lien but the Fitzpatricks made no defense, and judgment was rendered according to the prayer of the petition.

The Hatfield indebtedness on the date of the judgment with interest amounted to $1266, and the master commissioner was directed to make the sale subject to it on terms prescribed therein. The appraisers of the commissioner fixed the cash value of the entire property at $2600. Deducting from that appraisement the amount

of the Hatfield debt left $1334 as the value of the equity of the owners, Fitzpatrick and wife, two-thirds of which was $889. At the sale plaintiff's bid of $835 was accepted by the master commissioner, and all of which he reported to the court. Plaintiff excepted to the sale "for the reason that the property sold or which was purported to have been sold was not appraised at all, or was not appraised in the manner prescribed by law." The court overruled them with exceptions, and ordered the sale confirmed, but directed that no deed be executed to the purchaser because his bid was not two-thirds of the appraised value of the debtor's equity in the property, all of which was then burdened with the prior and undue Hatfield lien amounting, as we have said, at the date of the judgment, to $1266. Plaintiff objected to that ruling of the court and declined to comply with the terms of his purchase. A rule was then issued against him to show cause why he should not be punished for contempt in so refusing. In response thereto, plaintiff relied on his exceptions with elaboration, insisting (among other complaints) that if the debtor's equity was the only property to be sold the appraisers should have fixed its value in express terms and not leave it to be arrived at by mathematical calculation.

Furthermore, it was urged that to properly comply with the enacted law with reference to the sales of real estate in satisfaction of liens and for the payment of debts—when the lien enforced is an inferior one and the sale is made subject to a superior one—the entire property should be sold and consequently the value of it as an entirety should be appraised and if the bid made by the purchaser is equal to or more than two-thirds of that appraised value—as augmented by the amount of the prior lien or liens—then no right of redemption would exist, and the purchaser would be entitled to a deed. Such situation appeared in this case, and which had the effect, as plaintiff insisted, to render the order of the court denying him the right to a deed illegal and erroneous, and justified his refusal to comply with the terms of his purchase. The court held the response insufficient and inflicted a fine on plaintiff. From that judgment, and other alleged erroneous orders of the court, he prosecutes this appeal. The Fitzpatricks, not having appeared in the case, made no objections or exceptions to any order of the court, nor have they appeared in this appeal, and from which their satisfac-

tion with all of the rulings of the court will be presumed.

The questions raised, and extensively as well as vigorously argued in brief of counsel for appellant, were precipitated by an amendment to subsection 3 of Section 694 of our Civil Code of Practice, enacted by chapter 105, page 656 of the Session Acts of 1916, whereby the holder of a junior lien on incumbered real estate was given the right to enforce it when due by procuring a sale of the incumbered premises subject to the liens of the prior but undue incumbrance. It is the harmonizing of that right with the provisions in Section 2364 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes that produces the confusion from which the questions insisted upon and argued on this appeal arise. Plaintiff's counsel insists that the entire property is sold under a judgment obtained by an inferior lienholder, and, consequently, that it should be appraised as an entirety and sold as such with the right of the purchaser to begin his bid with that amount, which, if it is two-thirds of the appraisement, entitles him to a deed to the property with all rights of redemption eliminated, or if his bid, plus the amount of the prior liens at that time equal two-thirds or more of the appraisement the same consequence should follow.

Learned and industrious counsel for plaintiff vigorously argues, in a closely typed brief of 55 pages, that his position as so outlined is correct and should have been followed by the trial court. On the contrary, as we have seen, it interpreted the sections of the Statute and Code supra to only authorize a sale—under a judgment obtained by an inferior lienholder—of the debtor's equity in the property sold over and above the value of prior liens upon it, and, therefore, only that equity should be appraised by the commissioner making the sale subject to such prior lien, and that the purchaser thereof must bid two-thirds of the appraised value of that equity in order to destroy the right of redemption in the owners of the property and entitle the purchasers to an immediate deed upon confirmation. Consequently, when the prior incumbrance is paid the purchasers automatically become the absolute owner of the property. It was the latter interpretation of the applicable sections supra that the trial court applied in this case, and which we are urged to overrule and to adopt instead the interpretation of appellant's counsel.

At the outset it must be admitted that the situation created by the statutes referred to is more or less confusing and it appears that the direct question as herein presented has not heretofore been before this court, although some cases—as will later appear—seem to approve the principle adopted by the trial court. Counsel in his brief sets forth four theories "for determining what constitutes a bid of two-thirds of the appraised value in a case like this." They are designated by the letters "A," "B," "C," and "D," and are:

"(A) According to the first theory, the fact that the property is sold subject to a lien, has nothing to do with the amount which the purchaser must bid under Section 2364 of the Statutes; and according to this view the purchaser must not only take subject to the lien, but must bid two-thirds of the full appraised value of the entire property in addition thereto. (B) According to the second view (which is the position taken by Judge Allen and by the Jefferson Circuit Court) the equity is the thing being sold and hence the purchaser must not only take subject to the prior lien, but must, in addition, bid a sum equal to two-thirds of the value of the equity. (C) According to the third view, the property itself is being sold and the purchaser must bid two-thirds of the appraised value of the property. However, upon complying with the terms of sale the purchaser is entitled to take credit for the amount of the prior lien, even though he does not pay it off. (D) The fourth view (which is the view which we contend for in this brief) proceeds upon the same theory as stated in (C) above, but contends that since the bill of sale advertised the property subject to the lien, the purchaser need only bid what he is willing to pay for the property, in addition to the senior lien."

The trial court adopted theory (B), while counsel insists that theory (D) is the correct one, and which he urges this court to approve. Since neither the court nor counsel approved theories (A) and (C), and since their disapproval accords with our view, they will each be eliminated from the case and not considered, although they are extensively discussed in appellant's brief.

In 1932 the same questions here presented were determined by Judge Lafon Allen in the case pending before him of O. M. Ryser v. Frank C. Kich et al., he then being one of the two judges of the Chancery Branch of

the Jefferson Circuit Court. He wrote an opinion adopting theory (B) supra, and overruled all objections thereto whereby the involved questions were presented. Later in the cause a motion was made to set aside that order and to sustain the objections made as based on some one or more of the other theories supra, including, of course, theory (D), the one now advanced by appellant's counsel as the correct one. Briefs supporting the latter motion were filed—not only by counsel for the complaining litigant in that case, but by various other counsel for money lending organizations as amicus curiae—and in passing on that motion Judge Allen called to his assistance Associate Chancery Judge John Marshall, and the two concurred in a second opinion (written by Judge Allen) with the first one that he alone had rendered in the same case, and overruled the motion to set aside the order made at the time of his first opinion. Those two opinions were made a part of this record by an order of court, and approved by it as the law governing the determination of the involved questions. Judge Allen, in preparing those opinions, employed his usual researchfulness and logic in determining the questions before him equally as well, if not better, than we could hope to do, and for which reason we have determined to insert more or less copious excerpts therefrom as a part of this opinion. His two opinions will be referred to as "the first opinion" and as "the second opinion."

In the first opinion, after stating the facts and the practice by which the questions were presented, Judge Allen said:

"If the required appraisement (Section 2362, Kentucky Statutes) must be an appraisement of the whole property, without deduction of the senior encumbrance which is to remain upon the property, then we are confronted with a dilemma. If the remaining encumbrance is considered as a part of the purchase price, then there is grave danger that the debtor's equity in the property will be sacrificed. If, on the other hand, the senior encumbrance is not to be considered as part of the purchase price, then the purchaser, in order to get the property immediately and free from a right of redemption, must bid two-thirds of the full appraisement, without deduction of the senior encumbrance. In that event, he may be required to bid a sum largely in excess of the net value of the property. Let us suppose that the prop-

erty to be sold is subject to a mortgage debt of $6,000 which is not due. Plaintiff's judgment is for $3,000. The property is appraised at $9,000. If there is no other bidder, then plaintiff, in order to get a deed, must bid not less than $6,000, although he will ultimately have to pay off the $6,000 mortgage, thus making the property cost him $12,000, or $3,000 in excess of the appraised value. In such case, he would actually have to pay his debtor $3,000 out of his own pocket, since his judgment is only for $3,000. When I say that he 'must' bid $6,000, I mean that he must either do this or forego his right to a sale altogether. And this is so because, if he bids less than that, he must wait a year for both deed and possession and is merely giving his debtor a year's extension. In that event, he is hardly better off than if he had not sued at all.

"Upon the other hand, if the remaining mortgage is to be considered as part of the purchase price, then in the case suppose the plaintiff by bidding $1 (assuming that there were no other bidders) could get a clear title to the property and the debtor's equity of $3,000 would be entirely lost. This dilemma presents itself, not only in a case where the plaintiff, the junior encumbrancer, purchases the property, but also in the case where an outsider purchases the property. It is easy to see, therefore, how strong a tendency this would have to discourage bidding at such sales. No one will intentionally purchase property for more than its value nor will outsiders be tempted to bid upon property when they know that they can get neither a deed nor possession for a year and may, within that time, be deprived of their purchase by the exercise of the right of redemption. In this situation, it is certain that the only bidder will be the plaintiff and, as I have pointed out, there would be little advantage to him in having a sale, if he cannot get a deed and possession.

'So far as concerns the danger to the debtor of having his equity sacrificed, in case the senior mortgage is treated as a part of the purchase price, it may be said that the debtor can prevent that sacrifice by bidding at the sale. Theoretically, this is true but as a practical matter it is illusory. It seems to me, therefore, that the solution of this difficulty is to adopt the view that the remaining mortgage (sr. lien) is not to be treated as part of the purchase price and that, in order to cut off the right of redemption, the bid need be only two-thirds

of the difference between the appraised value of the whole property and the balance of the mortgage debt that still remains a lien upon the property. I conclude, therefore, that it was an error to consider that the amount of plaintiff's bid was $50 plus the amount of the unsatisfied mortgage. This view accords with the dictum found in the opinion of the Court of Appeals in Hazard Lumber & Supply Company v. Horn, 228 Ky. 554, 15 S. W. (2d) 492.

"It is quite true that in a private transaction, where the purchaser assumes an outstanding mortgage, that assumption is treated as a part of the purchase price of the property. But in the case of a judicial sale such as we have here, there is no assumption of the outstanding mortgage by the purchaser. Although it is true that he must ultimately pay that mortgage in order to get a clear title to his property, he is not personally liable to the mortgagee. The bid which he makes represents his opinion as to the value of the debtor's equity in the property and it is this which he buys and pays for, trusting that in the future he may be able to lift the outstanding mortgage. If it is the equity which he buys, then it is the equity which is sold and it is consequently the equity which is appraised. If he bids two-thirds of the appraised value of the equity, then the debtor's right of redemption is foreclosed."

In the second opinion the views expressed in the first one were elaborated upon and more extensively dealt with. From it we take these excerpts:

"It will make it easier to understand this question if an imaginary case is stated. Let us suppose that there is a first mortgage on the property of $6,000 and a second mortgage of $2,000 and that the property is appraised at $9,000. It is obvious that, if the purchaser is to be allowed to count the first mortgage as part of the purchase price, he need bid only one dollar (or even one cent) in order to get a deed, since the amount of the first mortgage itself is two-thirds of the appraisement. Upon the other hand, if he must bid two-thirds of the appraisement, without counting the first mortgage as part of the purchase price, he will have to bid $6,000, which will not only satisfy his claim of $2,000 but will require him to pay into court an additional $4,000, to be then withdrawn by the debtor, since the debt secured by the first mortgage is not due and payable. Of course, no such bid would ever be made, since the purchaser, in

such case, in order to get a clear title, would ultimately have to pay $12,000, or $3,000 more than the appraised value of the property.

"The *legal* difficulty in accepting a rule that the first mortgage may be counted as part of the price is that the purchaser does not agree to pay it. The only thing he is *bound* to pay is his bid of one dollar (unless he be the plaintiff in the action, in which event he will be out his costs, if he cannot collect them from the debtor). The *practical* difficulty is that in many cases the owner's equity in his property will be sacrificed. In the imaginary case stated above that equity is $3,000. Of course, it may be said that the owner can protect himself by bidding but, as a matter of fact, he is not able to do so in the great majority of cases, particularly in these times of depression when nobody seems to have any money. I attempted to solve these difficulties by taking the view that, since it was *the equity* that was *purchased,* it was the *equity* that was *sold,* and, consequently, *the equity* that had been *appraised.* In fact, the appraisement was of the whole property but it was a simple matter of arithmetic to find what was the appraisement of the equity by deducting the amount of the first mortgage from the appraisement. It was suggested in the course of the argument that the owner is not entitled to this indulgence, since he has, in many cases, received the full amount of the appraised value, in the form of the two loans which have been made to him. This would be very plausible, if no deficiency judgment was to be given against the owner personally. But, if his equity is sold for one dollar, there will be, in the imaginary case above, a deficiency judgment against him of $1,999, which conceivably might be collected from him, if his circumstances improve. In that event, he would have lost an 'equity' of $3,000, for which he had received only $1,000."

Immediately following the above, the writer inserts a history of the law's requirement that land sold for debt under judicial process shall be appraised, with the consequent right of redemption if the price bid is not two-thirds of that appraisement, and which history we would be glad to insert if space permitted. Following it the opinion continues:

"Prior to the amendment of 1916, which authorized sales to enforce a junior lien, subject to a senior lien, subsection 3 of Section 694 of the Civil Code provided

as follows: (a) No sale prejudicial to the rights of any lien-holder; (b) Sale authorized where several debts are secured by one lien or liens of equal rank and are all due; (c) No sale, if debts of equal rank are due different persons and not all are matured; (d) Although all debts be not due, if they are held by the same person and the property is susceptible of advantageous division, enough may be sold to pay debts then due; otherwise, is property not divisible. Under these provisions, there was a series of cases, Hendrick v. Robert Mitchell Furniture Company, 29 S. W. 750, 16 Ky. Law Rep. 769; Salyer v. Union Bank, 149 Ky. 847, 150 S. W. 14; Gibbs v. Ballard County, 158 Ky. 500, 165 S. W. 692, which this section of the Code was construed as preventing a sale of the property to satisfy a junior lien where the debts were owned by different persons and the senior lien had not matured, if the land was indivisible. In Fisher v. Evans, supra, 175 Ky. 300, 194 S. W. 361, the court pointed out that all of these decisions involved a misunderstanding of the Code. The Court, therefore, in a case arising before the 1916 amendment, returned to the former rule that a junior lien could be enforced by a sale subject to the senior lien, not yet due, whether the land was divisible or indivisible, provided there were no special circumstances which would make such a sale prejudicial to the senior lien.

"I have gone over the history of this legislation in some detail because it has been argued that the appraisement statute had been adopted at a time when there could be no sale to enforce a junior lien subject to a senior lien and that, when the legislature amended the Code in 1916 so as to authorize such a sale, it merely overlooked the need for providing a special method of appraisement in such cases. This argument was based upon a misapprehension, since it appears that the present appraisement statute was enacted and continued in force for many years contemporaneously with a power in the court to order such sale. It is true, however, that the contrary view was adopted by the Court of Appeals in 185 (Hendrick case supra) and was followed as late as 1914 in the Maddox case, Maddox v. Bynum, 160 Ky. 619, 169 S. W. 981. It was not until January 1917, that it was repudiated in Fisher v. Evans, supra. The amendment of 1916 was no doubt adopted in order to avoid the effect of those erroneous decisions. Accordingly, it may still be argued that it was an oversight on

the part of the legislature not to amend also the statute as to appraisements, when in 1916 it amended the law as to sales.

"It must be admitted, I think, that no clear guidance on this subject is to be found in the statutes or case reports of Kentucky. I would, however, call attention to certain intimations which are to be found in these books. First of all, I refer again to Section 1709, Kentucky Statutes, which provides that, when the land is subject to an encumbrance, '*the interest of the defendant* in such property may be levied on and sold, subject to such encumbrance.' It is true that this refers to sales under execution but there is, of course, a strong analogy between the two classes of cases.

"In the case of Anderson v. Briscoe, 12 Bush 344, there was an execution sale of a life estate in real property. One of the points made on appeal was that the sale was void because the appraisers had valued the fee simple and not the life estate. The court put this objection aside upon the ground that none of the appellants was asking that the sale be set aside, but I think it may be fairly said that the court conceded that the appraisement was a wrong and would have justified a reversal, if the point had been properly made. I have already referred to the approval given in the case of Fisher v. Evans, supra, to the statement of a text-writer that a 'junior mortgage encumbers *only the equity of redemption remaining in the mortgagor*' and that a foreclosure may be had against '*this estate.*' In Smith v. Boone, 222 Ky. 1, 299 S. W. 1059, which was a suit for the settlement of a decedent's estate, application was made for the sale of real property to pay debts. The widow claimed the right to occupy the property as a homestead during her life, and, for the purposes of the sale, an appraisement was made of the real property subject to that right. The appraisers found that the fee simple title to the property was worth $1,000 but that, after deducting the present value of the widow's right of occupancy, the property was only worth $200. At the sale the widow purchased it for $200 and an objection was made to the sale on the ground that the 'real estate' (Section 2364, Kentucky Statutes) had not brought two-thirds of the appraisement. The court held that there was no right of redemption, since the interest sold (that is, the fee less the right of occupancy) had brought the amount at which it was appraised.

"In Hazard Lumber & Supply Co. v. Horn, 228 Ky. 554, 15 S. W. (2d) 492, there was an execution sale of land subject to a mortgage of $220. The property was appraised at $2,400 and the best bid was $1,312. It will be observed that the amount of this bid was not as much as two-thirds of the appraisement but that, if the amount of the mortgage were added to it, it was more than two-thirds. It was held that the purchaser was not entitled to possession, since under the *execution* statute, his purchase gave him only a lien on the property. The court, therefore, reversed the judgment which had awarded him a writ of possession. But in this connection the court said:

" 'In addition to this, the property was appraised at $2,400. It did not sell for two-thirds of its appraised value. The fact that the mortgage, added to the purchase money, amounted to two-thirds of the appraised value was entirely immaterial.'

"It is true that this statement was unnecessary to the decision of the case, since the purchaser at the execution sale got only a lien and, therefore, was not entitled to possession. But it was a statement by the court of an additional reason for not allowing the purchaser to have possession.

"The foregoing is all that I have been able to find in the statutes or decisions of this state which throws any light on our question and I come now to consider the question as one of first impression. Counsel for plaintiff insists upon a very literal interpretation of the appraisement statute but takes a very latitudinarian view of the redemption statute. He says that, since Section 2362, Kentucky Statutes, provides that *'the real estate'* shall be appraised, this must be taken literally as meaning the fee simple and that consequently there is no authority for appraising a smaller interest. But when counsel comes to deal with the redemption provision (Section 2364), which gives a right of redemption when the property *'does not bring* two-thirds of such valuation,' he is unwilling to give a literal construction to the word 'bring.' When property is said to 'bring' such-and-such a sum of money, it is meant that it has been sold to some one who has paid or agreed to pay that sum for it. Therefore, if the redemption provision is to be construed as literally as plaintiff construes the appraisement provision, there will be no escape from the

conclusion that the property in this case did not 'bring' two-thirds of the valuation, since plaintiff, as purchaser, has agreed to pay only $50, whereas the appraisement was $3,000.

"One of the counsel who have filed briefs as friends of the court puts the case in this way:

" 'If a voluntary sale were made of property encumbered for $1,000, for $1,000 in cash above the encumbrance, no one would suggest but that the property brought $2,000. If stock were sold for $40 per share on which the owner owed his broker $20 per share, the stock brought $40 a share and not $20. Giving the words of the statute their ordinary and natural meaning, the mortgage should be considered a part of what the property brings.'

"The trouble with these illustrations is that they must be presumed to deal with cases where the seller is released from any liability on account of the encumbrance or at least that he is protected either by an assumption of the encumbrance by the buyer or by the payment of the encumbrance out of the proceeds, as in the case of the broker's sale. But in the case we have, the debtor (mortgagor) gets neither a release nor an assumption which will protect him. He will still be personally liable to the second mortgagee for the balance due on that debt and will, in addition, be personally liable to the first mortgagee, if the purchaser does not pay that debt.

"With reference to the suggestion, mentioned above, that usually, and particularly in that poor market, the sum of the two mortgages is as great as the appraisement and that consequently the mortgagor has received the full value of his property in the form of loans, it must be said, I think, that this will not hold water. Let us suppose a case where there is only one mortgage and the appraisement of property is no more than the amount due on that mortgage. It will surely not be claimed that, if the mortgagee buys in the property for less than two-thirds of its value, the mortgagor's right of redemption is gone because he has already borrowed from the mortgagee the full value of the property. If he has a right of redemption in such a case, then he must have it in the case where the amount of the second mortgage plus the amount of the first mortgage equals the amount of the appraisement

"A very earnest and eloquent plea is made by another friend of the court on behalf of those who lend money on second mortgages. The writer of this brief insists that such a lender is a kind of philanthropist who is entitled to at least as much consideration as the debtor, and perhaps to a greater consideration, because in a case like the present the second mortgagee has fulfilled his contract, whereas the debtor has not. It is said, therefore, that the mortgagee occupies a better *moral* position than the mortgagor and that it would be a great injustice to shift a burden from the shoulders of the defaulting mortgagor to shoulders of the honest and philanthropic mortgagee.

"Undoubtedly, there will be an insupportable burden put upon the second mortgagee, if he be required to bid two-thirds of the value of the whole property, without being allowed to count the first mortgage as part of the purchase price. But under the rule which I adopted in entering the order which I am now asked to set aside, the hardship upon the second mortgagee seems to me to be negligible, if there is any hardship at all. Take the case which I have stated above in this opinion. What hardship would there be in requiring the second mortgagee to bid two-thirds of the mortgagor's equity of $3,000? He would have to bid $2,000. The only 'burden' that this would put upon him would be to deprive him of a (worthless) deficiency judgment against the mortgagor. Or, take the instant case: Instead of bidding $50, as he did, the second mortgagee would have to bid about $670, thus reducing his deficiency judgment from about $1,862 to about $1,242. This is not a very serious 'burden,' particularly in view of the fact that a mortgagor who could not keep up his payments would probably not be good for the judgment, whatever its amount. * * *

"Finally, it seems to me that a judgment requiring the purchaser to assume the first mortgage will result in an unwarranted destruction of the mortgagor's right to redeem his property, if it does not bring two-thirds of the appraisement. It is said in some of the briefs that this right is seldom or never exercised where property has been sold to satisfy a second mortgage, leaving a first mortgage on the land. This may be due to the fact that the practice which seems to have grown up of allowing the purchaser to have a deed immediately, when his bid, plus the first mortgage debt, equally two-thirds of

the appraisement. But whatever the reason, the legislature was the judge of the importance of this protection given to the mortgagor and the courts are not authorized to destroy it, simply because they may think that it has no value. In such case, the thing that is sold is the mortgagor's interest in the land, since it could only be that interest that was covered by the second mortgage. His interest is the fee simple burdened with the first mortgage. That is what is sold. It is impossible for the court to say that it will sell the unencumbered fee simple title, because it has no power to remove the encumbrance by requiring the holder of the first mortgage, against his will, to submit to a sale for the satisfaction of his claim, when it is not due. The land burdened with the first mortgage certainly had some value when the second mortgage was made. The lender, who took the second mortgage to secure a loan, accepted the security cum onere and, since the first mortgage is not due, he must sell the security as he received it, just as he would have to sell land subject to an easement which diminished its value, if the easement had existed when his mortgage was taken. This diminished interest of the mortgagor is subject to redemption within a year, if it does not bring two-thirds of *its* value. However poor the prospect may be that the mortgagor will be able to exercise the right of redemption, the court cannot deprive him of it.

"Upon the whole, I think that the best method of protecting all interests is to take the view that the thing to be appraised is the thing that is to be sold, that is to say, the value to be arrived at by the appraisers is the value of the land burdened with the first mortgage, just as in the case of Smith v. Boone, supra, the value of the thing appraised was the value of the land burdened with the widow's right of occupancy. This view seems to me to be logically sound and quite consistent with a reasonable interpretation of the statutes affecting the matter."

We do not feel that we could add to the strength of Judge Allen's analysis of the situation whereby he arrived at conclusions meeting our approval. The complications and dilemma to be solved arises from an effort to follow the technicalities of the common law in such procedures, and to bring in accord therewith alterations made by our statutes supra, especially the amendment of 1916, chapter 105, page 656, to subsection 3 of

Section 694 of our Civil Code of Practice, whereby a sale might be made of the property in proceedings by a junior lien holder subject to a prior undue lien or liens thereon. Where the debt or debts secured thereby were not due then—prior to the enactment of that amendment —no junior lien could be enforced until the prior debts became due; in which case the entire title was sold to satisfy all liens, the holder of the senior ones being made party to the proceedings. In the application of any of the theories advanced supra, imaginable situations might arise whereby someone's interest might be slightly impaired over and above what it would be had another theory been adopted; but the situation calls for a practical solution, and the one arrived at by Judge Allen, and herein approved by us, undoubtedly possesses the least potentialities for possible harmful results. The practice as so outlined is easy to follow, free from complications, and fairly takes care of the interest of all parties concerned.

The right of redemption vested in the mortgagor or owner of the property in lien spreads out and covers his right to obtain the unencumbered title by discharging the prior lien, and when the purchaser at a judicial sale in a procedure like this obtains that right, and exercises it, the unencumbered title automatically and by operation of law vests in him, the same as if the unsold equity had remained with the original owner, the creator of the lien. The net results are that the owner of the property it compensated for his equity; the purchaser gets all of the remaining interest of the owner which is all that was sold and all that he purchased; the holder of the superior lien loses nothing, since his security covers the sold equity, which is not lost to him by its sale. It will be observed, therefore, that the status existing before the sale (subject to prior liens) remained the same, except the purchaser at such a sale becomes substituted to the rights of the original owner. We can evolve no more practical solution than the one advanced by Judge Allen and herein approved.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole Court sitting.